**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| DORIS E. ANDERSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **CIVIL ACTION NO. 2:08-CV-053-TFM** |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Following an Appeals Council remand of a favorable decision in her application for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401 *et seq.*, and supplemental security income benefits under Title XVI of the Act, 42 U.S.C. §§ 1381 *et seq*, Doris E. Anderson ("Anderson") received a hearing before an administrative law judge ("ALJ") who rendered an unfavorable decision. When the Appeals Council rejected review, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner"). Judicial review proceeds pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and 28 U.S.C. § 636 (c), and for reasons herein explained, the court AFFIRMS THE COMMISSIONER'S decision.

**I. STANDARD OF REVIEW**

Judicial review of the Commissioner's decision to deny benefits is limited. The court cannot conduct a *de novo* review or substitute its own judgment for that of the Commissioner. *Walden v. Schweiker*, 672 F.2d 835 (11th Cir. 1982). This court must find the

Commissioner's decision conclusive "if it is supported by substantial evidence and the correct legal standards were applied." *Kelley v. Apfel*, 185 F. 3d 1211, 1213 (11th Cir. 1999), citing *Graham v. Apfel*, 129 F. 3d 1420, 1422 (11th Cir. 1997).

Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560.

The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994).

## II.  ADMINISTRATIVE FINDINGS

Anderson, age 41 at the time of the hearing, completed ninth grade. Anderson's past

work experience includes employment as a hotel housekeeper, poultry worker, hospital housekeeper, cook, parking lot security worker, production line worker, and sales associate/cashier. She has not engaged in substantial gainful work activity since the alleged (amended) onset date of July 10, 2005. Anderson cited her inability to sleep, constant worrying, and depression as the causes of her disability. The ALJ found Anderson was severely impaired by depression and borderline intellectual functioning, but that she did not have any impairment or combination of impairments that meet or equal in severity any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Anderson testified about her education and work history during the administrative hearing. Anderson told the ALJ she was could read and write "a little bit," and sometimes perform simple addition and subtraction. She did not take any special courses in school before leaving after the ninth grade.[1] Her jobs included collecting garbage, cooking for the public school system, hotel housekeeping, parking lot security, Wal-Mart associate/cashier, and poultry worker.[2] Even though Anderson said she did not work during in 2003 because of the deaths of her mother and husband, the ALJ identified $10,00 in earnings for that year.[3] Anderson told the ALJ the deaths were the initial trigger for her disability, but currently she could not work because of leg pain, headache, and high blood pressure.[4] Anderson said she

---

[1] R. at 384-85.

[2] R. at 385-93, 419.

[3] R. at 389.

[4] R. at 394, 396.

would begin taking pain medication after the hearing.[5] Anderson did not like to interact with strangers, and could not handle stress or pressure.[6] She said she could stand up for eight hours, sit for three or four hours, walk for two hours, but could not bend too much.[7] Anderson takes Zoloft for depression, has thoughts of hurting others, and has crying spells when she thinks about her mother.[8]

A medical expert, Dr. Sidney Garner, reviewed Anderson's record (including reports of her mental and adaptive functioning), and opined she has borderline intellectual functioning with depressive disorder, not otherwise specified, mild in nature.[9] Dr. Garner said Anderson did not meet or equal Listing 12.05 or 12.04.[10] The ALJ asked a vocational expert (VE) to state an opinion as to whether Anderson could perform her past relevant work if her testimony was found fully credible. The VE noted that Anderson's testimony had not specified a level of pain, and as such, she would be able to perform her past work.[11] The VE listed other jobs Anderson would be able to perform, including assemblers, grader/sorters,

---

[5]R. at 398.

[6]R. at 400.

[7]R. at 401-02.

[8]R. at 405-06.

[9]R. at 408.

[10]R. at 408.

[11]R. at 421.

and gluing/packaging machine operator.[12] The ALJ sought to clarify whether Anderson alleged any physical impairment before presenting mental restrictions to the VE, and counsel confirmed Anderson's claim was "strictly mental."[13]

Next, the ALJ asked the VE to assume an individual without physical impairments, but with mild inability to respond appropriately to supervisors, coworkers and customers/public; a mild inability to use judgment in simple one or two-step work-related functions; a marked inability to used judgment in detailed work-related decisions; a moderate inability to deal with changes in a routine work setting; a moderate inability to understand, remember or carry out simple one or two-step instructions; a marked inability to understand, remember and carry out detailed instructions; a moderate inability to maintain attention, concentration or pace for periods of at least two hours; a mild inability to maintain activities of daily living.[14] The VE responded that these limitations would permit Anderson to perform all past jobs except cook, security, and sales associate/cashier.[15] Anderson's counsel asked the VE whether a person with marked impairments in social functioning, concentration/ persistence/pace, and ability to perform repetitive tasks would be able to work. The VE responded an ongoing deficit in persistence/pace/concentration would preclude work at any

---

[12]R. at 422.

[13]R. at 422.

[14]R. at 422-23.

[15]R. at 423.

level.[16]

After full consideration of Anderson's subjective allegations of pain and functional limitations, the ALJ found they were not fully credible. The ALJ found the allegations were not supported by substantial medical evidence in the record, and were inconsistent with her reported activities. He found Anderson retained the residual functional capacity ("RFC") to engage in work activity at any exertional level, but imposed limitations related to her depression and borderline intellectual functioning. The ALJ determined Anderson could perform her past relevant work, and accordingly, the ALJ concluded Anderson is not disabled.[17] Despite the ALJ's finding on non-disability at step four of the sequential evaluation, he chose to proceed to step five of the disability analysis. The ALJ consulted a vocational expert (VE) to determine a person of Anderson's age, education, past relevant work experience, and residual functional capacity was not disabled, but was in fact able to perform work as an assembler, grader/sorter, and machine operator (gluing/packaging).

### III.  ISSUE

Anderson specifies a single issue for judicial review:

1. Whether the Commissioner erred by failing to properly consider the listing at 20 C.F.R. 404 Subpart P § 12.05 C.

### IV.  DISCUSSION

---

[16]R. at 424.

[17]R. at 32-33. The ALJ's disability analysis followed the five-step sequential evaluation process set forth in 20 C.F.R. §404.1520 and summarized in *Phillips v. Barnhart*, 357 F. 3d 1232 (11th Cir. 2004).

**The ALJ did not err in finding Anderson's impairments failed to meet the criteria of 20 C.F.R. 404 Subpart P §12.05 C.**

Anderson argues the ALJ erred in his determination because he failed to properly evaluate whether her impairments met the listing at 20 C.F.R. 404 Subpart P §12.05(C). She further alleges her retardation, in combination with her depression, imposes "an additional and significant work-related limitation of function" which qualifies her as disabled under that regulation. *See* 20 C.F.R. 404 Subpart P §12.05(C).[18] The Commissioner responds Anderson did not prove her disability because the record in her case does not meet all the criteria set forth in Listing §12.05.

The provision at issue in this appeal states "[M]ental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period . . . ." 20 C.F.R. 404 Subpart P § 12.05. The regulation continues by setting out four sets of alternative criteria, each of which qualify an applicant for disability if the deficits in adaptive functioning are also present. Subparagraph C states "[A] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation or function." 20 C.F.R. 404 Subpart P § 12.05(C). The Eleventh Circuit has stated

Generally, a claimant meets the criteria for presumptive disability under

---

[18] Anderson cites asthma and hypertension as additional considerations for her disability. Pl. Br. at 9. However, counsel clarified during the administrative hearing that Anderson's claim for benefits rested solely on mental, not physical grounds. The Court will not address Anderson's argument citing physical grounds for a finding of disability.

7

> section 12.05(C) when the claimant presents a valid I.Q. score of 60 to 70 inclusive, and evidence of an additional mental or physical impairment that has more than "minimal effect" on the claimant's ability to perform basic work activities. This court, however, has recognized that a valid I.Q. score need not be conclusive of mental retardation where the I.Q. score is inconsistent with other evidence in the record on the claimant's daily activities and behavior.

*Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (internal citation omitted).

Anderson argues her full scale IQ score of 66 places her in the mild range of mental retardation and qualifies her for the first part Listing §12.05. In support of the validity of this classification, she argues three opinions ranked her as mildly retarded.[19] Anderson also argues the record demonstrates the required deficits in adaptive functioning to satisfy the disability requirements of the listing. Indeed, Dr. Glen King, Ph.D., evaluated Anderson prior to the onset date alleged for this application and diagnosed mild retardation with the ability to perform simple to mildly varied repetitive tasks. Dr. King also noted Anderson's ability to work part-time whenever called upon.[20]

The ALJ gave substantial weight to a post-onset assessment conducted by Dr. Marnie Smith Dillon, a licensed clinical psychologist. Dr. Dillon reported Anderson's intelligence scores were Verbal IQ (61), Performance IQ (59), and Full Scale IQ (56) on the Wechsler Adult Intelligence Scale.[21] Dr. Dillon reported the scores were artificially depressed because of malingering by Anderson, but opined her scores would have fallen in the high range of

---

[19] Pl. Br. at 6.

[20] R. at 26-27.

[21] R. at 29-31, 35.

mild mental retardation even with a good effort.[22]  Anderson was also evaluated by Donald Blanton, Ph.D., who administered the Wechsler Scale with results of a Full Scale IQ of 66. Dr. Blanton found Anderson mildly retarded, did not detect malingering, concluded she was significantly depressed and encouraged her to obtain regular mental health treatment.[23]  In giving substantial weight to Dr. Dillon's findings the ALJ noted the medical expert's observation that Dr. Blanton was not a specialist, *i.e.*, a licensed psychologist, and discredited his conclusion as to Anderson's mental state and need for treatment.[24]

Despite Anderson's Weschler scores indicating mild retardation from all examiners, the ALJ found her employment history and adaptive functioning skills, noted by Drs. King and Dillon, placed her in the borderline intellectual functioning range.[25]  The ALJ noted Anderson's placement in normal educational channels during school, ability to communicate and care for herself, use of community resources, and work record.[26]  The medical expert's testimony highlighted Anderson's history of managing her own finances, malingering during some tests, daily activities, lack of psychiatric treatment, and significant work history.[27]  The ALJ devoted a significant portion of his decision to explaining that a valid IQ score by itself

---

[22]R. at 30.

[23]R. at 32-33.

[24]R. at 35-36, 40, 411-12.

[25]R. at 38.

[26]R. at 38.

[27]R. at 409-410.

does not satisfy the listing under *Lowery, id*., but must be present with any one of the four sets of criteria in paragraphs A-D of § 12.05.[28]

The ALJ did not err by finding Anderson did not meet the criteria in § 12.05(C). The decision and hearing transcript demonstrate his awareness of the proper interpretation of § 12.05(C), as he emphasized Anderson must satisfy the full text of the regulation, in addition to the IQ criteria in paragraphs A-D.[29] This is the correct construction of § 12.05, under which "a claimant must at least (1) have significantly subaverage general intellectual functioning; (2) have deficits in adaptive behavior; and (3) have manifested deficits in adaptive behavior before age 22." *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997); *see also Sellers v. Barnhart* , 246 F.Supp.2d 1201, 1207 (M.D. Ala. 2002) (holding a claimant must demonstrate "deficits in adaptive behavior" under § 12.05). Anderson's work history and daily activities show she did not display "deficits in adaptive functioning" required under the regulation. These factors were appropriately noted in the ALJ's discussion of Anderson's failure to qualify as retarded under § 12.05(C).

Anderson argues a diagnosis of mental retardation implies a deficit in adaptive functioning, and the ALJ substituted his opinion for that of medical experts by finding that her level of functioning and past work activity negated eligibility under the listing.[30]

---

[28] R. at 36-37.

[29] R. at 308.

[30] Pl. Br. at 6-7.

However, the only support for her claim on this point comes from Dr. Blanton, whose contrary opinion was discredited by the ALJ after noting Drs. King, Dillon and Garner (the testifying medical expert), are specialists and entitled to greater deference in assessing Anderson's mental abilities.[31]  Finally, Anderson asks the Court to consider Dr. Blanton's diagnosis of depression as a "mental impairment imposing an additional and significant work-related limitation of function." *See Lowery, id.*; 20 C.F.R. 404 Subpart P § 12.05(C). The ALJ decision noted Anderson's vague complaints of mental problems prior to the alleged onset date.  The record showed non-compliance with medication and follow-up treatments.[32]  Again, the recommendation for ongoing mental health treatment by Dr. Blanton was discredited, due in part to Dr. Garner's opinion that Dr. Blanton mental RFC findings were "overstated," and Dr. Blanton's background in education, rather than psychology.[33]

The ALJ was required to consider a claimant's activities and work history when interpreting § 12.05(C). *Lowery*, 979 F.2d at 837.  This court has  followed the Eleventh Circuit and recognized the importance these factors when applying § 12.05(C). *See Whetstone v. Barnhart*, 263 F.Supp.2d 1318, 1325-26 (M.D. Ala. 2003).  The ALJ's determination that Anderson was able to perform past relevant work or other occupations stands on even firmer ground when one considers that, whatever limitations her mental functioning may impose, they were no impediment during her previous employment in

---

[31]R. at 36.

[32]R. at 28.

[33]R. at 411, 40.

various occupations. Her work history and higher adaptive functioning provided firm support for the ALJ's decision under the caselaw of this circuit.

The ALJ's determination in Anderson's case is supported by substantial evidence, and this court finds no error in the ALJ's decision.

Done this 25th day of September, 2008.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE